UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JACK MUSACHIA, <br><br>       Plaintiff, <br><br> v. <br><br> PERNIX THERAPEUTICS, LLC, et al. <br><br>       Defendants. | Case No.: 2:18-cv-01445-RDP |

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion to Dismiss (Doc. # 60) Plaintiff's Second Amended Complaint (Doc. # 57). The Motion is fully briefed. (Docs. # 60, 63, 66). After careful consideration, and for the reasons stated below, Defendants' Motion to Dismiss (Doc. # 60) is due to be granted.

**I.    Background**

Plaintiff Jack Musachia asserts two claims against Quickcare Pharmacy, Inc. ("Quick Care[1]") and Supersaver Pharmacy, Inc. ("Supersaver") (collectively, "Defendants"). Each allege a violation of the False Claims Act ("FCA"). The FCA provision at issue in Count One is 31 U.S.C. § 3729(a)(1)(A), which creates a cause of action against "any person who … knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States. The provision at issue in Count Two is 31 U.S.C. § 3729(a)(1)(B), which creates a separate cause

---

[1] The court notes that in his pleadings and papers Plaintiff uses "Quickcare" and "Quick Care" interchangeably. (*See* Doc. # 57).

of action against "any person who … knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" submitted to the United States.

A. **Legal Background**

There are various ways that a submitted claim may be "false or fraudulent" under the FCA. One is if a claim violates the Anti-Kickback Statute ("AKS"). 42 U.S.C. § 1320a-7b(g). An AKS violation is per se "false or fraudulent" under the FCA. *Id.* Indeed, the AKS "broadly forbids kickbacks, bribes, and rebates in the administration of [G]overnment healthcare programs," and the statute is violated if the kickbacks "induce the referral of an individual for services paid under a federal health care program." *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1272 (11th Cir. 2018) (citing § 7b(b)); *United States ex rel. Silva v. VICI Mktg., LLC*, 361 F. Supp. 3d 1245, 1253 (M.D. Fla. 2019) (internal quotation marks omitted) (quoting *United States v. Choudhry*, 262 F. Supp. 3d 1299, 1306 (M.D. Fla. 2017) (internal citation omitted)). Importantly, the FCA "does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly *asks* the [g]overnment to pay amounts it does not owe." *United States ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (internal citations omitted). In other words, a violation of the AKS without accompanying submission of claims to the Government is not a violation of the FCA. Instead, [i]t is the *submission* and *payment* of a *false … claim …* that creates FCA liability." *United States ex rel. Mastej v. Health Management Associates, Inc*., 591 F. App'x 693, 706 (11th Cir. 2014) (emphasis in original).

B.   **Factual and Procedural Background**[2]

Plaintiff filed this *qui tam* action[3] against Defendants. (Doc. # 57 at ¶¶ 1-11). Following the court's Memorandum Opinion and Order (Doc. # 54), Plaintiff filed his SAC. (Doc. # 57). Defendants thereafter filed their second Motion to Dismiss Plaintiff's Second Amended Complaint.[4]

Plaintiff is a former sales representative at Pernix Therapeutics, LLC,[5] a pharmaceutical company that manufactured the opioid ZoHydro. (*Id.* ¶¶ 1, 5-9). As a sales representative, Plaintiff "actively advertised and marketed" a joint marketing and sales program ("Joint Program") entered into by Pernix and Defendants. (*Id.* ¶¶ 6-14). Neither of the Defendants employed Plaintiff. Rather, Plaintiff worked inside doctor's offices and was "instructed to leave printed advertising materials and discuss with office staff (including physicians) a prescription direct fulfillment program." (Docs. # 57 ¶¶ 12-14; 57-1; 66 at 3-4). Plaintiff distributed fliers to physicians and health care providers at the direction of Pernix and "on behalf of" Defendants. (Doc. # 57 ¶¶ 6, 7, 12). The Joint Program is described in a flier Plaintiff submitted as an exhibit to the Second Amended Complaint. (Doc. # 57-1).

---

[2] For purposes of ruling on Defendants' Motion to Dismiss (Doc. # 60), the court treats the factual allegations of the Second Amended Complaint as true, but not its legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[3] "In a *qui tam* action, [a] relator pursues the [G]overnment's claim against the defendant, and asserts the injury in fact suffered by the [G]overnment." *United States ex rel. Farmer v. Republic of Honduras*, 438 F. Supp. 3d 1321, 1325 (S.D. Ala. 2020).

[4] Plaintiff's First Amended Complaint was filed August 28, 2019. (Doc. # 41). Defendants filed a Motion to Dismiss on October 18, 2019 (Doc. # 48), which the court denied without prejudice in its September 30, 2020 Memorandum Opinion and Order. (Doc. # 54). The court's order instructed Plaintiff to file a Second Amended Complaint to cure the deficiencies posed by the First Amended Complaint and to serve the Second Amended Complaint on Defendants. (*Id.*).

[5] Pernix Therapeutics, LLC ("Pernix") and Pernix Ireland (collectively, the "Pernix Defendants"), were original parties to this action. However, claims against the Pernix Defendants were dismissed without prejudice (Doc. # 54) due to the pendency of Chapter 11 Bankruptcy proceedings. *See* 11 U.S.C. § 362. Plaintiff retains a potential right to reinstate the Pernix Defendants as parties to this action following the conclusion of the Chapter 11 proceedings, with the filing date of any reinstatement relating back to the original filing date. (*Id.*).

Defendants are pharmacies that distribute and fill ZoHydro prescriptions. (Doc. # 57 ¶¶ 6, 8-9). In filling prescriptions, Defendants engaged in the Joint Program, which began with a physician's decision to prescribe Zohydro to a patient. (Doc. # 57-1).

After the physician wrote the prescription, Defendants used two mechanisms in the Joint Program to "increase [the number of filled ZoHydro] prescriptions." (Doc. # 57 ¶¶ 6, 20, 34). The first involved free shipping of ZoHydro to patients. (*Id.* ¶¶ 1, 14, 18, 28, 32, 40). "Quick Care … addressed users demand through free shipping to federal beneficiaries." (*Id.* ¶ 18). The free overnight shipping "sav[ed] customers from having to visit the local pharmacist." (*Id.* ¶¶ 6, 8-9, 17).

The second part of the Joint Program involved the waiver of copayments for ZoHydro. (Docs. # 20-1; 57 ¶¶ 15-16, 19-20, 22, 26, 32, 34). Notably, the flier disseminated by Plaintiff states that the Joint Program "is not valid if your prescription is paid/partially paid by Medicaid, Medicare, Federal or State healthcare programs." (*Id.*). However, according to Plaintiff "[d]espite the … disclaimer barring waiver for federal[ly] [insured patients], [Defendants] dispensed ZoHydro ER" and waived copayments for these patients. (*Id.* ¶ 19). And, after using the copayment waiver mechanism to induce patients to order ZoHydro prescriptions, Plaintiff alleges that Defendants submitted claims for federally insured patients to the Government.[6] (*Id.* ¶¶ 23, 26, 35, 37). Defendants were aware they "could not give away ZoHydro without collecting a co-pay if federal monies were involved." (*Id.* ¶ 26). Plaintiff claims he has "direct and independent knowledge" of the program's details, and he asserts that his complaint is not based upon public information. (*Id.* ¶ 7).

---

[6] The Second Amended Complaint does not allege (in any specific or even general terms) that Defendants submitted claims to the federal Government for prescriptions filled via free overnight shipping.

## II. Standard of Review

The Federal Rules of Civil Procedure require a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that include nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor will "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion, the court views a complaint's allegations in the light most favorable to the non-movant. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(b), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" a complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290

(11th Cir. 2010)). The task is context specific and, to survive the motion, allegations must permit the court, based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a plausible claim, then dismissal is appropriate. *Twombly*, 550 U.S. at 570.

Plaintiff has asserted claims under the FCA, which are subject to the heightened pleading standard required under Rule 9(b). *See Clausen*, 290 F.3d at 1308; *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 568 (11th Cir. 1994). Thus, Plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened particularity requirement "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged." *Clausen*, 290 F.3d at 1310 (citing *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

In applying the particularity requirement to FCA violations premised on AKS violations, "a plaintiff must plead facts as to time, place, and substance of the defendants alleged fraud, specifically the details of the defendants allegedly fraudulent acts, when they occurred, and who engaged in them." *Id*. at 1310-11 (citing *Cooper*, 19 F.3d at 567-68) (internal quotations omitted); *see Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005) (applying the heightened pleading standard to FCA claims established by AKS violations); *see also United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) ("[E]lements of the AKS violation must also be pleaded with particularity under Rule 9(b)[] because they are brought as a FCA claim."). This is especially important in *qui tam* actions where relators may be incentivized to file cases quickly (and without particularity) because the "first-to-file bar" precludes any subsequent action (and, consequently, a *qui tam* finder's fee award due to the relator)

except cases brought by the United States. *United States ex rel. Bernier v. Infilaw Corp.*, 347 F. Supp. 3d 1075, 1081 (M.D. Fla. 2018) (citing 31 U.S.C. § 3730(b)(5)); *see United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006) ("Rule 9(b) ensures that the relator's strong financial incentive to bring an FCA claim—the possibility of recovering between fifteen and thirty percent of a treble damages award—does not precipitate the filing of frivolous suits.").

## III. Analysis

Defendants have moved for the dismissal of Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted. (*See* Docs. # 60, 66). Fed. R. Civ. P. 12(b)(6). Specifically, Defendants argue the Second Amended Complaint suffers from two defects: (1) it is a shotgun complaint and (2) it fails to satisfy Rule 9(b)'s heightened pleading standard regarding the alleged AKS violations and FCA violations. (Docs. # 60, 66). The court agrees. Each of these reasons (which are discussed fully below) provides an independent and alternative ground for dismissal. Accordingly, Defendants' motion is due to be granted.

### A. Shotgun Pleading

The court has already explained the types and problems of shotgun pleadings in detail and will not do so again here. (*See* Doc. # 54). The Eleventh Circuit has pointed to four types of shotgun pleadings:

> The [first and] most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The [second and] next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the

> defendants the claim is brought against. The unifying characteristic of all shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (internal footnotes and page numbers omitted). In a previous Memorandum Opinion (Doc. # 54), the court directed Plaintiff to cure the deficiencies of his First Amended Complaint (Doc. # 41). The court made clear that our circuit has "little tolerance for shotgun pleadings." (Doc. # 54 at 8 (internal citation omitted)). Although Plaintiff removed many extraneous facts from his First Amended Complaint (Doc. # 41), he otherwise did not heed the court's warnings or Eleventh Circuit precedent.

The Second Amended Complaint is a shotgun pleading of the second type because it contains "conclusory" and "vague" facts that continue to present a "moving target of general allegations." *Weiland*, 792 F.3d at 1324; *United States ex rel. Shelby v. Northside Pharmacy, LLC*, 2019 WL 4926805, at *4 (N.D. Ala. Jan. 30, 2019) (internal citations and quotation marks omitted). Count One alleges that

> Quick Care and Supersaver [sic] knowingly presented or caused to be presented false or fraudulent claims to federal programs for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A). Defendants Quick Care and Supersaver [sic] pharmacies knowingly presented or caused to be presented false or fraudulent Medicare and TRICARE claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A); that is Defendants knowingly made or presented, or caused to be made or presented, claims for payments of opioids for which no co-payment was collected, in violation of the AKS. Payment of the false and fraudulent claims was a reasonable and foreseeable consequence of Defendants' conduct.

(Doc. # 57 ¶¶ 36-38). But, the "false or fraudulent claims" are not identified, nor does Plaintiff allege when or how much the Government allegedly paid for these claims in the Second Amended Complaint.

Similarly, in Count Two, Plaintiff alleges that "Quick Care and Supersaver [sic] have knowingly made, used, or caused to be made or used false records or statements [—] *i.e.*, that no co-pay was due and/or needed to be collected … [and was] material to false or fraudulent clams in violation of 31 U.S.C. § 3729(a)(1)(B)." (*Id.* ¶ 39) (italics added). Plaintiff further asserts that

> Quick Care and Supersaver [sic] knowingly made, used, or caused to be made or used, false records or statements, namely, unjustified waiver of co-pays and/or providing free shipping as an inducement to [sic] that was said to be in compliance with the AKS material to false or fraudulent clams that were paid and approved by the Medicare and TRICARE programs in violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

(*Id.* ¶ 40). So, after alleging two separate courses of conduct (*i.e.*, copay waivers and free shipping), Plaintiff loosely alleges in Count Two that Defendants falsified records by submitting claims containing the "waiver of co-pays and/or providing free shipping" that they said were compliance with the AKS.[7] (*Id.*). Put another way, Plaintiff does not state whether the AKS violations supporting its FCA claim in Count Two is due to Defendants waiving copayments, providing free shipping, or waiving copayments and providing free shipping to federally insured patients.[8] Plaintiff's attempt to assert various theories of liability in the same count fails to provide a clear and plain statement required under Rule 8(a), let alone doing so with particularly under Rule 9(b).[9] *See, e.g.*, *Erickson v. Merck & Co.*, 2018 WL 3626469, at *2 (M.D. Fla. Feb. 22, 2018). This is

---

[7] Plaintiff's Second Amended Complaint contains other ambiguities. For example, he alleges that "Quick Care and/or Supersaver undertook the responsibility to contact the patient to make the determination of whether to waive the co-pay and dispense the ZoHydro ER and give the free overnight shipping." (Doc. # 57 ¶ 32; *see* Doc. # 57 ¶ 40).

[8] Adding to this confusion is the fact that there are internal inconsistencies between Plaintiff's factual allegations and the counts themselves. For example, Plaintiff alleges only that Quick Care provided free shipping to federal beneficiaries, not Supersaver. (Doc. # 57 ¶ 18). Yet, in Count Two (ignoring the ambiguity surrounding which theory of liability Plaintiff is trying to assert for an AKS violation), Plaintiff alleges that *both* Quick Care and Supersaver were providing free shipping. (*Id.* ¶ 39).

[9] To the extent that Plaintiff attempts to separately allege in Count Two that each theory of liability is a discrete violation of the FCA, the complaint also violates Rule 10(b), which requires that "each claim founded on a separate transaction or occurrence … be stated in a separate count…." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (alterations in original) (quoting Fed. R. Civ. P. 10(b)).

particularly important where, as here, a plaintiff bears the burden of pleading his claims in accordance with Rule 9(b). *See Wagner*, 464 F.3d at 1279-80. The court will not "dig[] through [Plaintiff's] complaint in search" of a valid claim by embellishing Plaintiff's allegations. *Barmapo*, 986 F.3d at 1328 (Tjoflat, J., concurring).

Finally, both counts contain conclusory paragraphs that do not connect the preceding thirty-five paragraphs (which discuss Plaintiff's role in the alleged scheme, multiple theories of liability, and multiple defendants) in any meaningful way. (Doc. # 57 ¶¶ 36-41). As the court warned in its Memorandum Opinion, pleading in this manner does not "connect each discrete cause of action (that is, each count) to the *specific* allegations that support that individual cause of action." (Doc. # 54 at 6 (internal citation omitted)).

    **B.    The Second Amended Complaint Does Not Satisfy Rule 9(b)**

Similar to the shotgun pleading issue, the court also warned Plaintiff about his obligations under Rule 9(b) to plead his FCA claims. (Doc. # 54 at 8). Once again, Plaintiff did not heed the court's advice. Despite the court's indication that it would require him to do so, the Second Amended Complaint fails to adequately plead violations of the AKS and the FCA. Both of these deficiencies justify dismissal of the Second Amended Complaint

        **i.    Plaintiff Does Not Adequately Allege AKS Violations**

Plaintiff alleges that Defendant provided "free overnight delivery" of ZoHydro. (Doc. # 57 ¶ 14). Free shipping is mentioned in Plaintiff's Second Amended Complaint a total of six times, but only in conclusory fashion. (*See, e.g.*, *id.*). For example, Plaintiff alleges that "[i]nside the doctor's offices, [Defendant] … through [Plaintiff] actively advertised that the doctors/patients select [Defendant] pharmacy … to dispense ZoHydro via free overnight delivery." (*Id.*). Further, with respect to federally insured patients the allegations are similarly conclusory. The Second

Amended Complaint alleges that "Quick Care … addressed users demand through free shipping to federal beneficiaries." (*Id.* ¶ 18).[10] Yet, Plaintiff does not allege with any specificity the details about a single patient, doctor, prescription, or federally funded transaction who Defendant waived shipping costs for (*i.e.*, provided a kickback or subsidy) in violation of the AKS. *See United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 790 (11th Cir. 2018) (holding that the plaintiff's claims failed to properly allege illegal kickback scheme where complaint was devoid of specific allegations of instances of kickbacks). Indeed, none of the exhibits Plaintiff attached with his complaint (*i.e.*, the program flier and the spreadsheet) reference free shipping provided to federally insured patients. (*See* Docs. # 20-1; 57-1).[11]

Plaintiff's allegations with respect to copayment waivers suffer from this same flaw. Although Plaintiff produced fifty ZoHydro prescriptions, there are no specific allegations of any copayment waivers that indicate an impermissible kickback. For example, the Plaintiff's spreadsheet has two columns related to copays, the first titled "Initial Copay Amount" and the second "Final Copay Amount." (Doc. # 20-1). Both columns read $ 0.00 for all prescriptions. (*Id.*). Plaintiff alleges that the $ 0.00 amounts in both columns "does not mean" that copayments were not due. (Doc. # 57 ¶ 19). He argues that these two allegations sufficiently plead an AKS violation. (Doc. # 63 at 6). The court disagrees.

---

[10] Notably, Plaintiff does not allege that Supersaver provided these benefits to federally insured patients.

[11] Defendant argues that free shipping is not a remuneration under the AKS or, in the alternative, that it would not exceed "nominal value" and thus be excluded from the statute. (Doc. # 60 at 21-22). The court does not determine whether, as alleged, free shipping is a "remuneration" under the AKS. Indeed, even if it is, the claim fails because the allegations fail to state free shipping with specificity for federally insured patients.

While copayment waivers are remunerations,[12] Plaintiff's conclusory explanation for the lack of copayment amounts due does not plausibly allege with *specificity* that any patients actually received kickbacks. That is, he does not allege that these specific patients owed copayments, the amount that they owed, or the amounts that Defendants waived. *See United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 723 (5th Cir. 2008) (holding that allegations that defendant "routinely failed to collect" copayments "do not come close to satisfying Rule 9(b)"); *cf. United States ex rel. Osheroff v. Tenet Healthcare Corp.*, 2013 WL 1289260, at *8 (S.D. Fla. Mar. 27, 2013) (holding that plaintiff adequately pleaded remuneration where the plaintiff specifically pleaded that specific contracts entered were below market value). Indeed, nominal amounts of refunds or discounts are not violations of the AKS. *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014).

### ii. Plaintiff Does Not Allege That Defendants Submitted Claims in Violation of the FCA[13]

As noted, Plaintiff has not properly alleged an underlying violation of the AKS. But, "[e]ven if [Plaintiff] successfully pleaded an underlying violation of the [AKS], [Plaintiff] must still allege a violation of the [FCA]." *Choudhr*y, 262 F. Supp. 3d at 1308. Plaintiff has failed to do so.

---

[12] As the relevant statutory provision indicates: "The term 'remuneration' includes the waiver of coinsurance and deductible amounts (or any part thereof), and transfers of items or services for free or for other than fair market value."42 U.S.C. § 1320a-7a(i)(6).

[13] Defendant also argues that Plaintiff does not sufficiently plead that Defendants alleged illegal conduct was "material to the [G]overnment's decision to pay the claim" or that Defendant had knowledge of any false claims. (Doc. # 60 at 25-26). Because Plaintiff has not alleged that claims were submitted to the Government, these arguments are not determinative. Nonetheless, they likely miss the mark. Defendants' disclaimer that federally insured patients are ineligible for the Joint Program tends to show they would have had knowledge that waiving copayments would violate the AKS and FCA. (Docs. # 57 ¶ 26; 57-1). Further, a violation of the AKS appears material to showing that the [G]overnment's decision to pay a claim was induced by fraud because "compliance with federal health care laws, including the [AKS], is a condition of payment by the Medicare program." *United States ex rel. McNutt. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005).

As previously discussed, because an FCA violation requires the submission of a claim to the federal Government for payment, plaintiffs bringing an FCA claim must plausibly allege that defendants presented "*an actual false claim* for payment … to the Government" because the "[FCA] does not create liability merely for a health care provider's disregard" for federal law." *Atkins*, 470 F.3d at 1357 (quoting *Clausen*, 290 F.3d at 1311) (emphasis in original) (internal citation and quotation marks omitted); *Carrel*, 898 F.3d at 1275.

In the Eleventh Circuit, a complaint alleging an FCA violation does not satisfy Rule 9(b) if it merely alleges that claims were submitted as a natural consequence of an underlying scheme. After all, the submission of a fraudulent claim "[cannot be] inferred from the circumstances." *Corsello*, 428 F.3d at 1013. (rejecting plaintiff's "argu[ment] that a pattern of improper practices of the defendants leads to the inference that fraudulent claims were submitted to the [G]overnment"). Put another way, it "is not enough that a relator 'merely ... describe[s] a private scheme in detail [and] then ... allege[s] simply and without any stated reason ... his belief that claims requesting illegal payments must have been submitted, were likely submitted[,] or should have been submitted.'" *Carrel*, 898 F.3d at 1275 (quoting *Clausen*, 290 F.3d at 1311 (alteration in original)). A plaintiff is required to separately allege the who, what, when, where, and how of Defendants' submitted claims. *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 797 (11th Cir. 2014) ("Whether submission of the claim is sufficiently established is a different question than whether the scheme has been sufficiently pleaded."); *see United States ex rel. Carver v. Physicians' Pain Specialists of Alabama, P.C.*, 2017 WL 4873710, at *2 (S.D. Ala. Oct. 27, 2017). Ultimately, the inquiry boils down to whether the "complaint includes 'some indicia of reliability' to support the allegation that an actual false claim was submitted." *HPC Healthcare*, 723 F. App'x at 789 (citing *Clausen*, 290 F.3d at 1311).

Generally, there are two buckets of indicia that a complaint can contain to satisfy Rule 9(b), and alleging indicia of reliability in either one of the buckets will serve to satisfy Rule 9(b). The first bucket includes allegations of "specific billing information—such as dates, times, and amounts of actual false claims or copies of bills" that were submitted to the Government. *Id*. (internal citations omitted); *Carrel*, 898 F.3d at 1277. For example, in *Carrel*, the plaintiffs submitted a spreadsheet with their complaint alleging that defendant offered kickbacks to federally insured patients who used defendant's HIV/AIDS treatments and submitted those treatments for payment from the Government. *Carrel*, 898 F.3d at 1269, 1278. To support their allegations that the services were submitted for claims to the Government, the relators argued that that their spreadsheet containing patients, the dates services were rendered, patients' insurance, and other information showed (along with other allegations) that the defendant submitted those services to the Government for payment. *Id*. at 1278. But, the court rejected the argument that the information in the spreadsheet, which established the "*possible* sources of funding," was sufficient to allege that claims were "*actually*" submitted to the Government. *Id*. (emphasis in original); *see Clausen*, 290 F.3d at 1312 ("No policies about billing or even second-hand information about billing practices were described."); *Keeler*, 568 F. App'x at 797 (11th Cir. 2014) (internal citations omitted) ("[F]or at least some of the claims, a relator must provide the following: 'details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the [G]overnment, the particular goods or services for which the [G]overnment was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices.'"); *cf. U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1226 (11th Cir. 2012) (holding

that plaintiffs satisfied Rule 9(b) with specific accounts, amounts billed, and itemized charges to the Government).

The second bucket that a relator may use is to establish some indicia of reliability that false claims have been submitted (such as direct knowledge). In the absence of a complaint with particularities of submitted claims, courts "are more tolerant toward [those types of] complaints … [that] allege[] personal knowledge or participation in the fraudulent conduct." *Carrel*, 898 F.3d at 1276 (quoting *Matheny*, 671 F.3d at 1230 (11th Cir. 2012)). However, at a minimum, there must be an explanation as to the basis of asserting that fraudulent claims were submitted that is based on personal knowledge. *Mastej*, 591 F. App'x at 704 ("It is not enough for the [plaintiff] to state baldly that he was aware of the defendant's billing practices, to base his knowledge on rumors, or to offer only conjecture about the sources of his knowledge.") (internal citations omitted)). The court addresses each bucket below.

As to the first bucket, this case is on point with *Carrel*. Plaintiff's allegations fail to allege with particularity that Defendants submitted fraudulent claims to the Government. For example, in the SAC, Plaintiff alleges that its spreadsheet (Doc. # 20-1) "references at least 50 detailed examples" of prescriptions filled "and paid for by the Government insurance with no co-pay collected." (Doc. # 57 ¶ 19). But, the spreadsheet does not contain any information regarding claims, billing information, dates of submission, bills submitted, amounts charged to the Government, or any amount received from the Government. *See Keeler*, 568 F. App'x at 797. In other words, it "does not memorialize any actual claims [Defendant] submitted to [G]overnment programs for services provided to illegally referred patients." *Carrel*, 898 F.3d at 1278. Indeed, Plaintiff's lack of particularity is highlighted in his conclusory allegation that Defendants "financially profited" and "gain[ed]" from their scheme. (Doc. # 57 ¶ 22). Nor is the allegation

that federally insured patients were identified in Plaintiff's examples sufficient to assume that claims for those patients were actually submitted for claims. *See Corsello*, 428 F.3d at 1013 (holding that patients with completed Medicare forms was insufficient to assume "submission of fraudulent claims"); *see also Est. of Helmly v. Bethany Hospice & Palliative Care of Coastal Georgia, LLC*, 2021 WL 1609823, at *3 (11th Cir. Apr. 26, 2021) (rejecting relator's argument that "all or nearly all" patients were Government healthcare beneficiaries). Put another way, the court will not "infer from [all of these] circumstances" that the claims "must have been submitted, were likely submitted[,] or should have been submitted." *Carrel*, 898 F.3d at 1276 (quoting *Clausen*, 290 F.3d at 1311) (alteration in original); *see Helmly*, 2021 WL 1609823, at *3.

With respect to the second bucket, several cases in the Eleventh Circuit have evaluated the circumstances necessary to satisfy the standard of "direct, first-hand knowledge" in submitted claims to the Government. On one hand, in *Hill v. Morehouse Medical Associates, Inc.*, an employee who worked for seven months in the billing department of the defendant where the alleged fraudulent submissions occurred had sufficient knowledge and participation in the fraudulent scheme to satisfy the heightened standard. 2003 WL 22019936 at *4-5 (11th Cir. Aug. 15, 2003); *see, e.g.*, *Walker v. R & F Properties of Lake County, Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005) (direct first-hand knowledge satisfied by nurse practitioner who worked for defendant and had explicit conversations about billing practices with office manager). On the other hand, without specific knowledge about billing practices -- *i.e.*, that the person was directly involved with submitting claims to the Government -- a plaintiff lacks indicia of reliability. *See, e.g.*, *Corsello*, 428 F.3d at 1013-14 (direct first-hand knowledge not satisfied by sales employee who was "aware" of fraudulent billing practices "based on information and belief"); *Helmly*, 2021 WL 1609823, at *3 (holding that relator who attended monthly financial meetings and had "access to

[defendant's] billing systems" to confirm that false claims were submitted has insufficient to satisfy the Rule 9(b) standard).

This case, again, falls on the side of inadequate pleading. Plaintiff is a "former pharmaceutical sales representative for Pernix [who] worked on behalf of [Defendants] inside medical offices." (Doc. # 57 ¶¶ 6, 14). And, "[a]s a former Pernix employee who also acted on behalf of the defendants, [Plaintiff claims (quite generally) to have] direct and independent knowledge" of the allegations in the Complaint. (Doc. # 57 ¶ 7). But, importantly, Plaintiff does not allege to have any specific knowledge of Defendants' billing practices. Indeed, he was a sales representative for Pernix, not an employee of either Defendant. *See Clausen*, 290 F.3d at 1314 (upholding dismissal of claims where plaintiff failed to allege specifics of submitted claims and was a "corporate outsider"). That is, despite his assertion that he has "direct and independent knowledge" of the purported false claims submitted to the Government, Plaintiff has failed to allege any specific examples of actual false claims submitted to the Government. He does not plead which alleged misrepresentations were made, any document in which they were made, whether such misrepresentations were express or implied, or whether such misrepresentations were affirmative or by omission. Without allegations of "firsthand knowledge of the [defendants] internal billing practices and the manner in which the fraudulent billing schemes were implemented," Plaintiff fails to plead indicia of reliability with respect to the submission of false claims sufficient to satisfy Rule 9(b). *Atkins*, 470 F.3d at 1358 (alterations in original) (internal citation omitted); *cf. Hill*, 2003 WL 22019936, at *4 (holding relator had sufficient indicia of reliability where she worked in billing department where false claims were submitted).

## IV. Conclusion

For all these reasons, Defendants' Motion to Dismiss (Doc. # 60) Plaintiff's Second Amended Complaint is due to be granted. The court will enter an Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this July 7, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE